## STATE LIFE INS. CO. OF INDIANA v. NOLEN.

### No. 3954.

Court of Civil Appeals of Texas. Texarkana.

Feb. 26, 1931.

Rehearing Denied March 5, 1931.

See, also, 13 S.W.(2d) 406; 24 S.W.(2d) 22.

Arnold & Arnold, of Texarkana, Ark., for appellant.

King, Mahaffey, Wheeler & Bryson, of Texarkana, Tex., for appellee.

. SELLERS, J.

This suit was instituted by Mrs. Bobbie Palmer Nolen, as beneficiary in a certain policy of insurance upon the life of her husband, Kimball Nolen, deceased, against the State Life Insurance Company of Indiana. The case was tried to a jury and resulted in a verdict for the plaintiff in the sum of $2,-700, which sum included the amount of the policy, penalty, and attorney's fees.

The defense was a general denial. That the insurance was forfeited and the policy lapsed by its terms for nonpayment of the premium due on February 14, 1927. The answer further pleaded, the facts being specifically stated, to the effect that in fact there was no waiver, expressly or by intention, of the payment of the premium, nor waiver or estoppel of the right to declare the forfeiture of the policy for such nonpayment. The plaintiff in reply set up estoppel.

The facts as developed on the trial of the case are substantially as follows:

Jack Nolen, who is the same as Kimball Nolen, was insured by the State Life Insurance Company of Indiana for the sum of $2,000. This policy lapsed for nonpayment of the premium due February 14, 1927, and the term of the extended insurance, as provided for in the policy, expired on October 14, 1927. The insured made a loan with the insurance company, which loan and interest thereon was due February 14, 1927, and was properly charged against the reserve of the policy, on account of which the term of extended insurance was shortened to 232 days from the date of the lapse to October 4, 1927.

On July 3, 1927, insured wrote to the company to know what condition his policy was in. The company advised the insured of the true facts with respect to the policy as above set out. The insured thereafter wrote the company to send necessary papers for reinstatement of policy, and on July 23d the company wrote the insured as follows:

"Dear Sir: In accordance with request written in the letter by Mrs. Nolen under date of July 14th, we made a calculation to cover the reinstatement of your policy No. 295754 as follows:

| | |
|---|---:|
| Quar. premium due 2/14/27 | $17.36 |
| Int. on quar. prem. | .29 |
| Semi-annual prem. due 5/24/27 | 24.08 |
| Int. on s. a. prem. | 1.14 |
| Int. on loan due 2/14/27 | 2.66 |
| Cost to reinstate and pay prem to 11/14/27 and int. on loan to 2/14/28. | 54.53 |

"From the above you will note that remittance of $54.53 would be required in which your premium and interest would be paid to

November 14, 1927, and February 14, 1928, respectively.

"A re-examination without expense to the company would be required and we are enclosing a blank for this purpose. This should be taken to Dr. John Martin, P. O. Box 1594, Seminole, Okla., and the examination made at your expense. Upon receipt of the completed form and your check, the matter will be referred to our medical department, and if approved, your policy would be again in full force.

"A check for $10.78 was forwarded with the original letter sent out from our auditing department when they advised you that the policy had been carried to extended insurance. The letter we sent you with our communication of July 7th was merely a copy of this original communication. The check was received by you as we have the canceled check here in our files.

"We trust you will forward the re-examination blank and remittance promptly so that you will again have the benefit of this insurance.

  "Yours very truly,  Actuary."

On October 10, 1927, insured wrote the company:

"Gentlemen: Enclosed please find examination report and check. Hope this will put my policy back in force without further trouble.

"Thanking you for your past favors,

  "Yours very truly,  Kimball Nolen."

On October 14, 1927, the company wrote the insured:

"We regret that it is necessary for us to return the examination blank which you forwarded with your letter of October 10th. You will note that the first part has not been completed and we will thank you to complete this and also sign it. When the form is completed in these respects, kindly return it to this office so that the matter may receive our further attention."

  "Yours very truly,  Actuary."

The insured made additions to the examination blank and returned the same to the company. The examination blank and the revival contract attached thereto was duly signed by insured and dated November 9, 1927, and returned to the company, and thereafter on November 21, 1927, the company wrote the insured:

"Dear Sir: Your policy No. 295754 has been reinstated and we are enclosing herewith proper premium receipts for the February and May, 1927, premium payments; also interest on the loan and our check No. 394326 payable to your order for 47c covering over-remittance.

"Of course another quarterly premium will have to be paid within the grace period following November 14, 1927, and we are enclosing a notice of the same. We trust you will send in remittance of $17.36 sometime before December 14, 1927.

  "Yours very truly,

    "C. H. Beckett, Actuary."

On November 18, 1927, the company indorsed and deposited to its account in the Indiana National Bank of Indianapolis, Ind., the check together with other checks. This check was properly presented to the bank upon which it was drawn on November 22, 1927, and payment was refused on November 22, 1927. The check was protested on the same date, the reasons assigned for the nonpayment of the check being "insufficient funds." The protested check was returned to the insurance company on Saturday, November 26, 1927, and on November 28, 1927, the company addressed a letter to the insured stating to him that the check was protested and returned, and, because of this nonpayment, "the premiums are not paid and the receipts we furnished you are invalid." The letter further inclosed a medical certificate and requested the insured to have it made out and returned with premiums past due and $2 protest fees. Inclosed in the letter was the protested check of the insured. At the date of the above letter the insured was dead, although the company did not know it. It is shown that it takes about four days for a letter to pass between the company and the insured. The evidence also shows that after November 9th there were only three days, to wit, November 14th, 15th, and 16th, on which the insured had in the bank sufficient funds to have paid the check.

■■ As we understand the record, these facts are admittedly proven and are without conflict. Appellant's principal assignment of error complains of the insufficiency of the evidence to authorize the judgment entered by the court. This is the second appeal of this case, and the appellant admits that the pleadings and evidence on this appeal are the same, so far as the appellant is concerned, as they were on the former appeal. The opinion of the Supreme Court on the former appeal is to be found in 24 S.W.(2d) 22, 23, and that court held that the evidence made an issue of fact to be determined by the jury. Since the evidence is the same on this appeal, this court is bound to accept the opinion by the Supreme Court as the law on this case, 15 C. J. p. 961, § 359, and for this reason, the first assignment of appellant is overruled.

■ The Supreme Court in its opinion on the former appeal of this case in passing upon the single issue involved said: "We think that the trial court should have submitted to the jury the issue of acceptance of the check for the premium by the insurance company." Upon the trial of the case from which this appeal is taken, the court submitted but one issue to the jury as follows: "Do you find from a preponderance of the evidence that the insurance company accepted the check for $55.00 dated October 10, 1927, in

payment of the premiums then due?" There was no exception by appellant to the giving of this issue in charge to the jury, and, in the absence of an exception, this court is not called upon to review the action of the trial court in submitting same to the jury.

Appellant excepted to the court's main charge for its failure to define the phrase "accepted the check in payment of the premiums then due." The court, to meet appellant's objection to the charge, gave the following definition of the above phrase: "By the words, 'Accept the check in payment of the premiums then due' as used in the question submitted to you, means to receive said check on the part of the insurance company for the purpose and with the intent that the same should then and there together with Kimball Nolen's obligation to pay the same be appropriated by and become the property of the insurance company in satisfaction of said premiums."

It is the opinion of this court that the phrase here complained of is not such as was contemplated by article 2189, R. C. S. 1925, that the court should give a definition of for the reason that said phrase is composed of words of ordinary simple meaning and capable of being readily understood by any jury. Robertson v. Holden (Tex. Com. App.) 1 S. W.(2d) 570, 571.

The definition as given by the court not being called for, it follows that there was no error by the court in giving the definition unless the same, as worded, in some way limited the consideration of the issue by the jury to appellant's injury, and we do not see how it could have had such effect.

We are of the opinion that the court properly submitted the only issue that the jury was called upon to answer, and that there was no error by the court in refusing the special issues and charges requested by appellant. Neither was there any error in overruling appellant's motion to withdraw, for the consideration of the jury, the letter from the state agent of the insurance company to Kimball Nolen.

Finding no error in the record, the judgment of the trial court is affirmed.