## SUPREME FOREST WOODMEN CIRCLE v. HORNSBY et al.

### No. 13552.

Court of Civil Appeals of Texas. Fort Worth.

May 21, 1937.

Rehearing Denied June 25, 1937.

Earle R. Stiles, of Omaha, Neb., and W. R. Saunders, Claude Williams, and Lightfoot & Robertson, all of Fort Worth, for plaintiff in error.

Houtchens & Houtchens, J. Edward Winters, and J. Harold Craik, all of Fort Worth, for defendants in error.

DUNKLIN, Chief Justice.

The Supreme Forest Woodmen Circle, a fraternal benefit society, incorporated under the laws of the state of Nebraska and doing business in the state of Texas as such a society under a permit in conformity with the statutes of Texas, issued to Mrs. Carrie E. Hornsby a policy of insurance; reading:

"The Supreme Forest Woodmen Circle, a fraternal benefit Society, organized and existing under and by virtue of the laws of the State of Nebraska, issue this Benefit Certificate to Sovereign Carrie E. Hornsby, a member of Grove No. 5 State of Texas, and upon due proof of the member's death, while in good standing, agrees to pay One Thousand Dollars (Face Amount) to Ross W. Hornsby, related as husband, provided that if the said beneficiary should not survive the member, payment shall be made to

\* \* \* Related as \* \* \* of the member, or in lieu thereof, if the member, while in good standing and not in default in the payment of any contribution, becomes permanently and totally disabled after twelve months from the date hereof and before attaining age 60, upon receipt of satisfactory proof and surrender of this Certificate for cancellation, the Society agrees to pay a Permanent and Total Disability Benefit of $500.00. \* \* \*

"A monthly contribution of $3.02 and Grove dues is due on the first day of each month and must be paid on or before the first day of the following month to the clerk of the Grove, during the life time of the member. Failure to pay such monthly contribution before it becomes delinquent will cause the suspension of the member, and during such suspension the certificate will be null and void.

"The Benefit Certificate, Constitution, Laws, and By-Laws of the Society, the application for membership and medical examination of the member herein named, and all amendments to each thereof, shall constitute the agreement between the Society and the member, and a copy of the same, certified by the National Secretary of the Society, shall be received in evidence of the terms and conditions thereof. \* \* \*

"In witness whereof, the Supreme Forest Woodmen Circle has caused this Benefit Certificate to be signed by its National President and attested by its National Secretary, and the corporate seal thereof to be impressed thereon at Omaha, Nebraska, this 16th day of April, A. D. 1927.

"Attest:

"Dora Alexander Talley, Mary E. LaRocca, "National Secretary    National President

"All payments required have been made and the Sovereign has been introduced as a member of this Grove. Signed this 12 day of April, A. D. 1927.

"Mina Pich, Guardian of the Grove

"Emily Turner, Clerk of the Grove.

"I have read the above Benefit Certificate of the Supreme Forest Woodmen Circle and know the conditions thereof, and hereby agree to and accept the same as a member of Grove No. 5, State of Texas, this 18th day of April, A. D. 1927, and warrant that I am in good health at this time, and have not had any disease since my medical examination for membership that has affected my health, and have complied with all acts and conditions and things required of me to be done by the laws of the Society, and that all statements made relative thereto are true.

"Carrie E Hornsby
"(Member sign here)
"(Seal)
"Form D    ·    Witness: Emily Turner.
"Death and Old Age Benefit with Disability.
·"Issued in lieu of ctf, dated March 26, 1924."

Following are provisions of the constitution and by-laws of the defendant:

"Sect. 44. The non-compliance with any of the conditions or non-performance of any of the requirements in the preceding section shall be an absolute bar in any claim upon the benefit fund of the Society, under or by virtue of any benefit certificate that may have been issued, or by reason of any preliminary steps that he or she may have taken to entitle applicant to the same; and no deputy, officer or any member of the Society has authority to change, alter, modify or waive the foregoing requirements or the consequences thereof in any manner."

"Sect. 45: The following conditions shall be made a part of every benefit certificate and shall be binding upon both member and Society to the same effect and degree as if incorporated in the certificate of membership:

"First—The certificate is issued in consideration of the representations, warranties, and agreements made by the person named therein, in his or her application to become a member, and in consideration of the payment made when introduced in prescribed form; also his or her agreement to pay all monthly payments and dues that may be levied during the time he or she shall remain a member of the Supreme Forest Woodmen Circle.

"Third—If the admission fees, dues, or monthly payments levied against the person named in the benefit certificate shall not be paid to the Financial Secretary of the Grove, as required by the Constitution and Laws of the Society, the certificate shall be null and void, and continue so until payment is made in accordance therewith.

"Ninth—The Constitution and Laws of the Supreme Forest Woodmen Circle now in force, or which may hereafter be enacted, By-Laws of the Grove now in force, or which may hereafter be enacted, the application and certificate shall constitute a part of the beneficiary contract between the Society and the member. Provided, further, that the payment of such certificate

or any part thereof shall be based upon one monthly payment on the entire beneficiary membership of this Society in good standing; nor shall any portion so paid be in excess of a like proportion of a single monthly payment on the entire beneficiary membership at that. time.

"Sect. 92: Should a member be suspended more than three months for the non-payment of monthly payments, in order to be restored to benefit membership, it shall be necessary to furnish satisfactory evidence of insurability, and pay all arrearages and dues, which shall be forwarded to the National Secretary, and upon receipt and acceptance, the certificate shall be in full force and effect."

This suit was instituted by Mrs. Hornsby, joined by her husband, against the society to recover the amount stipulated in the policy for total and permanent disability which she alleged she suffered on or about June 1, 1934, while the policy was in full force and effect, and before she reached the age of 60 years, and for attorneys' fees and the statutory penalty for defendant's refusal of payment.

The defendant pleaded forfeiture of the policy resulting from nonpayment of premiums on their due dates, to wit, the first day of each month as required by the contract of insurance.

By supplemental petition plaintiff pleaded defendant's waiver of that requirement by accepting such payments at later dates in keeping with its custom so to do, also estoppel resulting from its act in requiring plaintiff to make out and submit proofs of her claim of disability, including affidavits of physicians, one of which was of defendant's choosing, all of which involved considerable personal effort and inconvenience on her part.

The case was tried before a jury, who, in answer to special issues, returned findings as follows: On August 30, 1934, plaintiff Carrie Hornsby was suffering from a disease known as pellagra, on account of which she became totally and permanently disabled. Those findings are not challenged here.

Under the constitution and by-laws of the society, a member was allowed to pay dues for any month on the first day of the next succeeding month, which was the last date for payment. According to the undisputed testimony of Mrs. Mae Boswell, defendant's financial secretary, throughout the year 1933 defendant accepted plaintiff's dues for every month after the expiration of time allowed for payment; the delays ranging from six to fourteen days. And during the year 1934 her dues were paid as follows: January dues paid on February 13th; February dues on March 6th; March dues on April 10th; April dues on May 7th; June dues on July 14th; July dues on August 11th; August dues on October 16th; and September, October and November dues on November 26th.

On August 30, 1934, Dora A. Talley, defendant's national president, received this letter from plaintiff:

"8–27th–34

"Dear Mrs. Talley: I am compelled to ask for disability clause, and surrender my policy No. 432850. Please let me have blank for my Dr. to fill out and full particulars how soon it can be attended to for I sure do need it, as ever yours,

"Sovereign Carrie E. Hornsby
"Fort Worth, Texas.
"1131 Hemphill Street

"P. S. Disabled to work, 59 years old, had my policy 10 years, have borrowed money for 4 months to pay dues with, can't pay it back and can't afford to lose all I have put into it. Please help me.

(Rubber stamp) Received August 30, 1934.
"National Secretary."

In reply to that letter defendant's president wrote plaintiff advising her not to make out proof of disability unless she was positive that she was totally disabled, but that blanks for such proof would be sent if plaintiff thought she was disabled. Replying to that letter plaintiff wrote the following:

"9–12–34

"Dear Sov: My doctor says I am entitled to disability benefit. He knows my case and has for years. Please send blank at once. Your friend and sovereign,

"Carrie E. Hornsby
"1131 Hemphill Street
"Fort Worth, Texas.

"P. S. If you will look my back record with the Circle at Thurber, also Mingus, I paid $1.25 for years on a thousand, then hard luck and I dropped out for two years, then went in again here more than 10 years ago at $3.22 monthly. I do feel like I can't lose all I have paid in but can't pay dues any longer, disabled totally.

"(Rubber stamp) Received September 14, 1934

"National Secretary."

Under date of September 20; 1934, the defendant wrote, inclosing a blank disability form to be filled out by plaintiff, advising her she was entitled to $500, if totally and permanently disabled, and that she should pay her dues until she received the benefits. This form was to be partly filled out by plaintiff and partly executed by the officers of defendant's local lodge in Fort Worth, which, among other things, gave the names of two physicians who had examined her within the month preceding. This form, duly executed on September 25, 1934, was received by the defendant at its head office on September 27, 1934. Subsequently, the exact date not being shown by the record, the defendant mailed said two physicians blank forms to be filled out by each of them, which were duly executed by such physicians, showing that plaintiff was totally and permanently disabled, and were received by the defendant—one on November 8, 1934, and the other on November 23, 1934.

On December 11, 1934, the defendant wrote to plaintiff's attorneys, stating that plaintiff "was not entitled to disability benefits inasmuch as she did not furnish the society with evidence of her permanent and total disability while she was a member in good standing."

On the 11th day of January, 1935, at the special instance and request of the defendant, plaintiff submitted herself to a physical examination at the hands of defendant's physician, Dr. Judge M. Lyle.

█ Supplementing the verdict of the jury the trial judge filed findings of fact and conclusions sustaining plaintiff's pleadings of waiver and estoppel of right to claim a forfeiture of the policy, all of which appear in the judgment rendered. The facts noted above, together with others, all of which were uncontroverted, conclusively supported those findings and conclusions. And in this connection it is to be noted that since the payment of dues was for the benefit of the society, the provisions of the constitution and by-laws of the society that failure to pay dues for any month by the first day of the next ensuing month would terminate the contract of insurance, could be waived by the officers of the society, especially by its president. American Nat. Ins. Co. v. Cleveland, 126 Tex. 189, 86 S. W. (2d) 217.

█ According to uncontroverted proof, at the time plaintiff became disabled and when defendant's president received notice of that condition, her policy was in full force and effect, and her insurance in the sum of $500 was then earned. If, under the constitution and by-laws of the society, she was obligated to continue payment of dues accruing thereafter, amounting to $3.22 per month, it was incumbent upon defendant to apply so much of the earned insurance as was necessary to cover such additional dues. Equity abhors a forfeiture and it would be inequitable for the society to declare a forfeiture of the policy for nonpayment of such dues while it owed plaintiff more than necessary to pay them. Timmerman v. Bankers' Reserve Life Co., 122 Tex. 603, 63 S.W.(2d) 687; Southern Travelers' Ass'n v. Levy (Tex.Civ.App.) 13 S.W.(2d) 460; Sovereign Camp, Woodmen of the World v. Bowers, 260 Ky. 347, 85 S.W.(2d) 665; Horn's Administrator v. Prudential Ins. Co., 252 Ky. 137, 65 S.W. (2d) 1017; Sovereign Camp Woodmen of the World v. Cayton (Tex.Civ.App.) 74 S. W.(2d) 158; Texas Mutual Life Ins. Ass'n v. Tolbert (Tex.Civ.App.) 91 S.W.(2d) 900; 24 Tex.Jur. § 143, p. 869.

█ Defendant's acceptance of dues for August, 1934, and for months subsequent thereto after notice in August of plaintiff's permanent disability and claim for insurance therefor, all in accordance with its custom theretofore in practice to accept such payments after their due dates, supported the plaintiff's plea of waiver of defendant's plea of forfeiture of the policy for nonpayment on due dates, even if it be said that under the constitution and by-laws of the society plaintiff was obligated to pay those dues to keep the policy in force. Equitable Life Assurance Ass'n v. Ellis, 105 Tex. 526, 152 S.W. 625; Southern Travelers' Ass'n v. Masterson (Tex.Civ.App.) 48 S.W.(2d) 771; Texas Mutual Life Ins. Co. v. Tolbert (Tex.Civ.App.) 91 S.W.(2d) 900; Kansas City Life Ins. Co. v. Elmore (Tex.Civ.App.) 226 S.W. 709; Dunken v. Aetna Life Ins. Co. (Tex.Civ.App.) 221 S.W. 691; Home Benefit Ass'n v. Catchings (Tex.Civ.App.) 38 S.W.(2d) 386; Calhoun v. The Maccabees (Tex.Com.App.) 241 S.W. 101; Grand Lodge Colored Knights of Pythias v. Green (Tex.Civ.App.) 69 S.W.(2d) 149; Franklin Fire Ins. Co. v. Singletary (Tex.Civ.App.) 74 S.W.(2d) 433; American Nat. Ins. Co. v. Cleveland, 126 Tex. 189, 86 S.W.(2d) 217.

█ The facts recited above were sufficient as a matter of law to support the plea of waiver and estoppel, and the same being undisputed, the submission of that

issue to the jury was not required. Furthermore, the record shows that when counsel for defendant excepted to the court's charge of failure to submit to the jury the issue of waiver, the court "requested counsel for the defendant to indicate what issues of fact on that subject he regarded as being controverted and counsel thereupon said that so far as he could recall, the facts were undisputed and that it was his opinion that such facts established a default."

For the reasons indicated, all assignments of error are overruled and the judgment is affirmed.